# STATE OF NORTH CAROLINA

COLUMBUS County

FILED

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
JOHN H. TOLLEY AND VICKIE S. TOLLEY

2016 MAY 20 ☐ 4:30

**Address**
131 DOGWOOD AVENUE

**City, State, Zip**
WHITEVILLE                    NC    28472

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3, 4

**VERSUS**

**Name Of Defendant(s)**
GREEN TREE SERVICING, LLC

DITECH FINANCIAL, LLC

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| GREEN TREE SERVICING, LLC | DITECH SERVICING, LLC |
| 150 FAYETTEVILLE ST. BOX 1011 | 150 FAYETTEVILLE ST. BOX 1011 |
| REGISTERED AGENT: CT Corporation System | REGISTERED AGENT: CT Corporation System |
| RALEIGH              NC  27601 | RALEIGH              NC    27601 |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)<br>KEVIN J. BULLARD<br>THE MCGOUGAN LAW FIRM<br>130 JEFFERSON STREET<br>WHITEVILLE          NC  28472 | Date Issued<br>5-20-16 | Time<br>4:30 | ☐ AM<br>☒ PM |
|---|---|---|---|
| | Signature<br>Jennifer Smith | | |
| | ☑ Deputy CSC | ☑ Assistant CSC | ☑ Clerk Of Superior Court |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time | ☐ AM<br>☐ PM |
|---|---|---|---|
| | Signature | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| | |
| Date Of Return | County Of Sheriff |
| | |

AOC-CV-100, Side Two, Rev. 6/11
© 2011 Administrative Office of the Courts

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE

COUNTY OF COLUMBUS     SUPERIOR COURT DIVISION

FILE NO:

| | |
|---|---|
| JOHN H. TOLLEY and,         ) | |
| VICKIE S. TOLLEY,           ) | |
|       Plaintiffs,            ) | **COMPLAINT** |
|                           ) | **INJUNCTIVE RELIEF** |
| VS.                         ) | **(JURY DEMAND)** |

**JOHN H. TOLLEY and,** )
**VICKIE S. TOLLEY,** )
      Plaintiffs, )
    )
**VS.** )
    )
    )
**GREEN TREE SERVICING, LLC,** )
**DITECH FINANCIAL, LLC,** )
**DITECH FINANCIAL, LLC f/k/a** )
**GREEN TREE SERVICING, LLC** )
      Defendants. )

Now comes the Plaintiff's complaining of the Defendants and says and alleges as follows:

1.     Plaintiffs are citizens and residents of Columbus County, State of North Carolina and have been for more than 6 months preceding this action.

2.     Upon information and belief, Defendant Green Tree Servicing, LLC is a foreign corporation, incorporated in the state of Delaware, doing business in the state of North Carolina with a registered office address of 150 Fayetteville Street, Raleigh, North Carolina, 27601.

3.     Upon information and belief, Defendant Ditech Financial, LLC, formerly known as Green Tree Servicing, LLC is a foreign corporation incorporated in the state of Delaware, doing business in the state of North Carolina with a registered office address of 150 Fayetteville Street, Raleigh, North Carolina, 27601.

4.     Defendants allege they are the current holders of a mortgage secured by a Deed of Trust and promissory note executed by Plaintiffs dated August 20, 1996.

5.     The real property securing the above-described Deed of Trust is located at 131 Dogwood Avenue, Whiteville, North Carolina 28472.

### FIRST CLAIM FOR RELIEF
(Misrepresentation)

1.     In January of 2013, Plaintiffs discussed a loan modification with Defendants, Green Tree Servicing, LLC regarding the property and mortgage located at 131 Dogwood Avenue, Whiteville, NC 28472.

2.     At that time, the undersigned counsel representing Plaintiffs in the loan modification worked out an agreement with Defendant, Green Tree Servicing, LLC.

3.      The Modification Agreement included a monthly payment of $935.00 each month for 3 months beginning February 1, 2013. After these 3 months, the loan would be extended to 360 months with a principal balance of $63,760.94 with an interest rate of 4.625%. (exhibit 1)

4.      The undersigned counsel received written documentation from Defendants, Green Tree Servicing, LLC by fax on May 21, 2013 regarding the loan modification.

5.      The principal balance contained in the modification documentation was $68,575.83 and the initial interest rate was 8.25%. (exhibit 2)

6.      The Plaintiff's attorney contacted Defendant, Green Tree Servicing, LLC and informed Defendant them the modification documents contained information that was different than what the parties had agreed on in January of 2013.

7.      After a period of communication between the parties, Plaintiff mailed certified funds to Defendants, Green Tree Servicing, LLC on or about March 17, 2014 in the amount of $10,163.20 to bring the account current based on the statement received from Defendants, Green Tree Servicing, LLC dated May 1, 2014 with a letter stating the interest rate agreed on was 4.625%. (exhibit 3)

8.      On or about May 14, 2014, the undersigned counsel sent Defendants, Green Tree correspondence following up on the March 14, 2014 letter and payment made by Plaintiffs due to no response from Defendant Green Tree Servicing, LLC and requesting a response within 10 days or suit would be filed. (exhibit 4)

9.      Upon information and belief, Plaintiff's continued to send payments to Defendant Green Tree Servicing, LLC, which were rejected.

10.     Defendant Green Tree Servicing, LLC has misrepresented the principal amount due under the mortgage agreement and promissory note and misrepresented the interest rate under the loan modification.

11.     The above misrepresentation has been to the detriment of the Plaintiffs in that Defendant Ditech f/k/a Green Tree has initiated a foreclosure action against the Plaintiffs on the subject property.

12.     Plaintiffs have been damaged as a direct and proximate result of the misrepresentation of Defendants in an amount in excess of $10,000.

### SECOND CLAIM
(Fraud)

1.      Plaintiff's previous allegations are realleged and incorporated herein by reference.

2.      Defendants have committed fraud against the Plaintiffs by agreeing to a principal balance of $63,760.94 and an interest rate of 4.625% and then sending a modification document for Plaintiffs signature that included a higher principal balance and a higher interest rate.

3. This fraud has injured the Plaintiffs by increasing the amount of money owed on their residence which is the subject of this action and an interest rate that continues to accrue damages above the rate they agreed on with Defendants.

4. This fraud by Defendants is the proximate cause of Plaintiffs damages and has resulted in Defendants initiating a foreclosure action against Plaintiffs.

5. Plaintiffs have been damaged in excess of $10,000.00.

## THIRD CLAIM
### (Unfair and Deceptive Trade Practices
### NCGS 75-1.1)

1. Plaintiff's previous claims are realleged and incorporated herein by reference.

2. Defendant's actions as alleged above constitute an unfair or deceptive trade practice which effect commerce.

3. Defendant's actions were the proximate cause of injury and resulted in damages to Plaintiffs.

4. Defendants actions of misrepresenting the principal balance and interest rate on a home mortgage offends public policy and is immoral, unethical, oppressive, unscrupulous and is substantially injurious to consumers such as Plaintiffs.

5. Plaintiffs have been damaged in excess of $10,000.00 and such damages should be trebled.

## FOURTH CLAIM
### (Breach of duty of good faith and fair dealing)

1. Plaintiffs' previous allegations are realleged and incorporated herein by reference.

2. Defendants owed a Fiduciary duty to Plaintiffs in regards to the mortgage and promissory note and loan modification agreement.

3. Defendants breached their duty by sending Plaintiff's modification documents to execute that contained information Defendants knew was different from the parties agreed upon terms.

4. After being notified in writing, Defendants continued to ignore correspondence from Plaintiff's counsel and initiated foreclosure action to foreclose on Plaintiff's home.

5. Plaintiffs have been damaged as a result of Defendants breach of Fiduciary duty of good faith and fair dealing.

6. Defendants breach of good faith and fair dealing owed to the Plaintiffs is the proximate cause of Plaintiff's damages.

7.     Plaintiffs have been damaged in excess of $10,000.00.

## FIFTH CLAIM
### (Injunctive Relief)

1.     Plaintiffs previous allegations are realleged and incorporated herein by reference.

2.     Defendants have initiated a foreclosure hearing against the subject property located at 131 Dogwood Avenue, Whiteville, NC 28472.

3.     Plaintiffs dispute that they are indebted to Defendants for the amount alleged in the foreclosure notice.

4.     Plaintiffs will suffer irreparable harm, damage and loss of property should Defendants be permitted to seek foreclosure before a determination is made regarding Plaintiff's claims against Defendants.

5.     Plaintiffs are therefore entitled to temporary, preliminary and permanent injunctive relief from this Honorable Court against Defendants.

6.     The Court should enter an injunction pursuant to Rule 65 of the North Carolina Rules of Civil Procedure enjoining and restraining the Defendants from further foreclosure proceedings pending further Orders of the Court.

7.     Plaintiff seeks to schedule a hearing for the purpose of determining whether or not a Restraining Order and Injunctive Relief should be set forth herein on the June 6, 2016 session of Civil Superior Court for the County of Columbus.

    Wherefore, Plaintiffs pray this Honorable Court as follows:

    1.     That the Court enter a preliminary and permanent injunction to enjoin the Defendants from the proceeding on any foreclosure action on the subject property contained in Plaintiff's Complaint and that a hearing be scheduled on June 6, 2016 at 10:00 a.m., or as soon thereafter as can be heard in the Superior Court Division, Columbus County Courthouse, Whiteville, North Carolina.

    2.     That Plaintiffs be awarded compensatory and punitive damages in an amount in excess of $10,000.00 for each and every claim alleged herein.

    3.     That Plaintiffs be awarded trouble damages for Defendants violation of unfair and Deceptive Trade Practices.

    4.     That Plaintiffs be awarded the costs associated with the prosecution of this action including reasonable attorney fees.

    5.     That a jury be impaneled to try all issues so triable by a Jury.

6.    For such other and further relief as this Court deems just, fair and equitable.

This, the 19th day of May, 2016.

Kevin J. Bullard
The McGougan Law Firm
Attorney for the Plaintiffs
130 Jefferson Street
Whiteville, NC  28472
910.640.1485

Exhibit #1

# THE MCGOUGAN LAW FIRM
## ATTORNEYS AT LAW
130 JEFFERSON STREET - POST OFFICE BOX 1319
WHITEVILLE, NORTH CAROLINA 28472
Telephone (910) 640-1485 - Fax (910) 640-3132

KEVIN J. BULLARD
T. SCOTT SESSIONS
WILL M. CALLIHAN, JR.

D.F. McGOUGAN, JR.
(1921 – 1994)

kjbullard@embarqmail.com
tssessions@embarqmail.com
willcallihan@hotmail.com

January 24, 2013

John Tolley
131 Dogwood Avenue
Whiteville, NC 28472

RE: Loan Modification with Green Tree

Dear John:

I have talked with Green Tree regarding the loan on your property located at 131 Dogwood Avenue, Whiteville, NC 28472.

Green Tree is offering the following loan modification proposal:

You would pay $935.00 each month for 3 months beginning February 1, 2013. After these 3 payments your loan would be current. You would extend the loan to 360 months beginning May 1, 2013. The principal balance is $63,760.94 and you will be notified of your new monthly payment amount before May 1, 2013. I am told it will be approximately the same amount as your February, March and April payments. Your new interest rate will be 4.625%.

Please let me know immediately if you agree to this proposal.

With Kindest Regards, I am

Sincerely yours,

Kevin J. Bullard

EXhiBIT # 2
FROM-

# green tree

## FAX COVER PAGE

FAX # 910.640.8132

TO: Kevin Bullard

FROM: Jessica Ext 67806

PAGES: (INCLUDING THIS COVER SHEET) 13 pgs

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received this message in error, please advise the sender by reply email, and delete or destroy the message.

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283

relationships that work

# green tree

04/25/2013

+ 0426662 00000000S 096FF8 - 0080031 3 oz. F
JOHN H. TOLLEY
131 DOGWOOD AVE
WHITEVILLE NC 28472-8695

relationships that work
# green tree

April 25, 2013

JOHN H. TOLLEY
131 DOGWOOD AVE
WHITEVILLE NC 28472-8695

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283

Re: Green Tree Servicing LLC ("Green Tree")
    Account Number: ████6895
    Property Address: 131 DOGWOOD AVE
                    WHITEVILLE, NC 28472

Dear JOHN H. TOLLEY and VICKIE S. TOLLEY:

**Congratulations!** You are approved for a permanent modification. This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter in its entirety so that you understand all of the steps you need to take to modify your mortgage payments.

**What you need to do:**
To accept this offer and take advantage of this opportunity, you must sign and return the enclosed Agreement by the above-referenced date. After the signed Agreement has been received, your mortgage will then be permanently modified. If you do not provide the required signed Agreement by the above-referenced date, this offer will end and your loan will not be modified.

If you have any questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST.

Green Tree Servicing LLC
Attention: Loss Mitigation, T111
7360 South Kyrene Road
Tempe, AZ 85283
Fax: 1-877-612-2422

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

FNMA Mod Cover Letter, 08/14/2012      YAFNMF08 1.1      LTR-1019



Investor Loan # ████ 1395

When Recorded Return To:
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 25th day April, 2013, between JOHN H. TOLLEY and VICKIE S. TOLLEY ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 08/20/1996 and recorded in Book or Liber 511, at page(s) 909, and/or Document# N/A of the Ilan Penny Records of Columbus County and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

131 DOGWOOD AVE
WHITEVILLE, NC 28472

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/01/2013, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $68,575.83 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the initial rate of 8.25000% and will begin to accrue as of 04/01/2013. The first new monthly payment on the Unpaid Principal Balance will be due on 05/01/2013. The interest rate and payment amount will change according to the below-referenced payment schedule. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 04/01/2053 (the "Maturity Date"). Borrower's payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT -Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)



| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| 1-6 | 8.250% | 04/01/2013 | $489.73 | 05/01/2013 | 72 |
| 7-39 | 8.250% | 04/01/2019 | $489.72 | 05/01/2019 | 407 |
| 40 | 8.250% | 03/01/2053 | $499.68 | 04/01/2053 | 1 |
| | | | | | |
| | | | | | |
| | | | | | |

·3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the · Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae UNIFORM INSTRUMENT                    Form 3179  1/01(rev. 01/09)

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower·may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of·Lender's rights under or ·remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of·recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender. ' .

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; .or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

Case 7:16-cv-00223-BO   Document 1-1   Filed 06/27/16   Page 15 of 25

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

_____(Seal)
Borrower

_____
Date

By: _____
Matthew M. Soto, Jr.
Senior Vice President - Originations
License Number: 5031

_____(Seal)
Borrower

_____
Date

_____
Date

Account#: 899666895

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)

Investor Loan # 1395

When Recorded ·Return To:
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 25th day April, 2013, between JOHN H. TOLLEY and VICKIE S. TOLLEY ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards· Rider, if any, dated 08/20/1996 and recorded in Book or Liber 511, at page(s) 909, and/or Document# N/A of the lian Penny Records of Columbus County and (2) the Note, bearing the same date as, and secured by,·the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

131 DOGWOOD AVE
WHITEVILLE, NC 28472

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/01/2013, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $68,575.83 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus·interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the initial rate of 8.25000% and will begin to accrue as of 04/01/2013. The first new monthly payment on the Unpaid Principal Balance will be due on 05/01/2013. The interest rate and payment amount will change according to the below-referenced payment schedule. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 04/01/2053 (the "Maturity Date"). Borrower's payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT-Single Family- Fannie Mae UNIFORM INSTRUMENT          Form 3179   1/01(rev. 01/09)



QR2462 000000005 D96FF6 6 of 12

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| 1-6 | 8.250% | 04/01/2013 | $499.73 | 05/01/2013 | 72 |
| 7-39 | 8.250% | 04/01/2019 | $499.72 | 05/01/2019 | 407 |
| 40 | 8.250% | 03/01/2053 | $499.66 | 04/01/2053 | 1 |
| | | | | | |
| | | | | | |
| | | | | | |

3. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by . Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT -Single Family- Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

LOAN MODIFICATION AGREEMENT -Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179 1/01(rev. 01/09)

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

LOAN MODIFICATION AGREEMENT -Single Family- Fannie Mae UNIFORM INSTRUMENT        Form 3179 1/01(rev. 01/09)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

By:_____
Matthew M. Soto, Jr.
Senior Vice President - Originations
License Number: 5031

_____
Date

_____(Seal)
Borrower

_____
Date

_____(Seal)
Borrower

_____
Date

Account#: 899666895

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

LOAN MODIFICATION AGREEMENT -Single Family-Fannie Mae UNIFORM INSTRUMENT          Form 3179  1/01(rev. 01/09)

Exhibit #3

# THE MCGOUGAN LAW FIRM
## ATTORNEYS AT LAW
### 130 JEFFERSON STREET - POST OFFICE BOX 1319
### WHITEVILLE, NORTH CAROLINA 28472
Telephone (910) 640-1485 - Fax (910) 640-3132

KEVIN J. BULLARD
T. SCOTT SESSIONS
WILL M. CALLIHAN, JR.

*D.F. McGOUGAN, JR.*
*(1921 – 1994)*

*kjbullard@embarqmail.com*
*tsessions@embarqmail.com*
*willcallihan@hotmail.com*

March 17, 2014

Green Tree Payment Processing
PO Box 660934
Dallas, TX 75266-0934

    RE: Account # ████6895
       Property located at: 131 Dogwood Ave
                    Whiteville, NC 28472

To whom it may concern:

Enclosed please find our client's certified funds in the amount of $10,163.20 which brings this account current.

Please forward an acknowledgement of receipt of their funds to my attention. As you know, our clients were approved for a loan modification with an interest rate of 4.625%.

Should you have any questions regarding this payment please contact me immediately.

Sincerely yours,
THE McGOUGAN LAW FIRM

Kevin J. Bullard

KJB/mtc

**FIRST BANK**

PURCHASER'S RECEIPT - RETAIN FOR YOUR RECORDS

**OFFICIAL CHECK**

11803185

REMITTER VICKIE S TOLLEY

DATE March 10, 2014

PAY TO THE ORDER OF GREEN TREE

$*****10,163.20

TEN THOUSAND ONE HUNDRED SIXTY-THREE AND 20/100

CUSTOMER COPY

NON-NEGOTIABLE

FOR HOME

**IMPORTANT NOTICE TO PURCHASER:**
HANDLE WITH CARE! THIS CHECK IS A BANK OBLIGATION. THIS IS YOUR RECEIPT AND YOU SHOULD SAVE IT.
PLEASE CONTACT THE PLACE OF PURCHASE IF YOUR CHECK IS LOST, STOLEN OR DESTROYED.

---

**FIRST BANK**

**OFFICIAL CHECK**

11803185

REMITTER VICKIE S TOLLEY

DATE March 10, 2014

PAY TO THE ORDER OF GREEN TREE

$*****10,163.20

TEN THOUSAND ONE HUNDRED SIXTY-THREE AND 20/100

FOR HOME

AUTHORIZED SIGNATURE

# green tree®

PO Box 6172
Rapid City, SD 57709-6172

#BWNKDVR
#INKLIMLQ9#

*' ON7020, 000057331, O9GT11-D55680-P8
JOHN H TOLLEY
131 DOGWOOD AVE
WHITEVILLE NC 28472-8695

| | |
|---|---|
| **Account Number** | ████6895 |
| **Next Payment Due** | 05/01/2014 |
| **Amount Due** | $9,835.76 |

*If payment is received after 05/01/2014, pay $9,835.76*

Phone: 1-800-643-0202
Mon - Fri 7AM - 8PM CST
Saturday 7AM - 1PM CST
Email: customer.service@gtservicing.com

Property Address:
131 DOGWOOD AVE
WHITEVILLE, NC 28472

## Account Information

| | |
|---|---|
| Principal Balance (Not a Payoff Amount): | $60,878.57 |
| Escrow Balance*: | $4,359.04 |
| Corporate Advance Balance**: | $78.14 |
| Unapplied Funds Balance: | $929.30 |
| Interest Rate: | 8.25000% |
| Interest Type: | Actuarial |
| Prepayment Penalty: | N |

*Escrow represents monies collected and held by servicer for the future payment of taxes and insurance.

**Corporate Advances represents monies advanced by servicer to pay taxes, insurance, and any other amount currently due that are not part of an escrow account.

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $228.8 |
| Interest: | $406.3 |
| Escrow: | $448.9 |
| Regular Monthly Payment: | $1,084.1 |
| Total Fees & Charges Due: | $0.0 |
| Optional Insurance/Other Products: | $0.0 |
| Past Due Amount: | $8,751.5 |
| Total Amount Due: | $9,835.7 |

## Past Payments Breakdown

| | Last Month | Year To Date |
|---|---|---|
| Principal: | $2,086.85 | $2,086.85 |
| Interest: | $4,265.15 | $4,265.15 |
| Escrow: | $3,642.72 | $3,642.72 |
| Fees and Charges: | $52.04 | $52.04 |
| Optional Insurance/Other Products: | $0.00 | $0.00 |
| Total | $10,163.20 | $10,976.06 |
| Unapplied Amount | $116.44 | $929.30 |

## Transaction Activity

| Date | Description | Charges | Payments |
|---|---|---|---|
| 03/24/2014 | Payment | | $10,163.20 |

Your account is now severely delinquent and your immediate action is required. Contact your account representative, KIMBERLEE L at 1-800-643-0202, extension 55191, to make immediate payment arrangements.

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure the loss of your home. As of 04/11/2014, you are 222 days delinquent on your mortgage loan. If you are experiencing Financial Difficulty: See back for information about mortgage counseling or assistance.

Any partial payments that you make are not applied to your mortgage, but instead are held in a separate unapplied funds account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

YOUR TOTAL PRINCIPAL PAID IN 2013 WAS $ 795.53.
YOUR TOTAL INTEREST PAID IN 2013 WAS $ 1,745.27.

Detach and return this portion with remittance

-Please make checks payable to Green Tree-
ACCOUNT NUMBER ████6895
Receipt of a personal check is authorization to collect payment electronically.

relationships that work
# green tree®

| Extra Amt to Escrow | | | |
|---|---|---|---|
| ☐ ☐ ☐ | . | ☐ ☐ | |

| | |
|---|---|
| **PAYMENT DUE DATE** | 05/01/2014 |
| **TOTAL PAYMENT DUE** | $9,835.76 |
| **TOTAL ENCLOSED $** | ☐☐.☐☐☐.☐☐ |

Enter total amount of payment enclosed

John H Tolley
131 Dogwood Ave
Whiteville NC 28472-8695

GREEN TREE
PO BOX 94710
PALATINE, IL 60094-4710

89966689 5   00063520      0000983576

Exhibit #4

# THE MCGOUGAN LAW FIRM
## ATTORNEYS AT LAW
130 JEFFERSON STREET - POST OFFICE BOX 1319
**WHITEVILLE, NORTH CAROLINA 28472**
Telephone (910) 640-1485 - Fax (910) 640-3132

KEVIN J. BULLARD
T. SCOTT SESSIONS
WILL M. CALLIHAN, JR.

*D.F. McGOUGAN, JR.*
*(1921 – 1994)*

*kjbullard@embarqmail.com*
*tsessions@embarqmail.com*
*willcallihan@hotmail.com*

May 14, 2014

Green Tree Payment Processing
PO Box 660934
Dallas, TX 75266-0934

RE: Account # █████6895
Property located at: 131 Dogwood Ave
Whiteville, NC 28472

To whom it may concern:

We sent a letter along with payment to your office on March 17, 2014 regarding the above referenced matter and still haven't received correspondence back. Enclosed you will find copies of the same along with a copy of the recent statement you sent to the Tolly family acknowledging payment so I will assume you also got our letter. I am requesting a response from one of your representatives regarding this matter within 10 days of receipt of this letter or we will be forced to file a law suit.

I look forward to hearing from you.

Sincerely yours,
THE McGOUGAN LAW FIRM

Kevin J. Bullard

KJB/mtc

)
)